# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

**FEDERAL TRADE COMMISSION**,

               Plaintiff,

    v.

**SEED CONSULTING, LLC**, also doing business as SEED CAPITAL and FOUNDATION FUNDING, a Nevada limited liability company,

**CREDIT NAVIGATOR, LLC**, a Nevada limited liability company,

**ERIK GANTZ**, individually, and as a principal and owner of SEED CONSULTING, LLC and CREDIT NAVIGATOR, LLC, and

**RANDY LANG**, individually,

               Defendants.

Case No. 2:21-cv-154

**STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT**

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its Complaint for Permanent Injunction and Monetary Judgment in this matter ("Complaint"), for a permanent injunction and other equitable relief in this matter, pursuant to Sections 13(b) and 19 and of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, Section 6(b) of the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6105, Section 410(b) of the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679h, and Section 2(d) of the Consumer Review Fairness Act of 2016 ("CRFA"), 15 U.S.C. § 45b.  The Commission and Defendants Seed Consulting, LLC, Credit Navigator, LLC, Erik Gantz, and Randy Lang stipulate to the entry of

1

this [Proposed] Stipulated Order for Permanent Injunction and Monetary Judgment ("Order") to resolve all matters in dispute in this action between them.

THEREFORE, IT IS ORDERED as follows:

## FINDINGS

1. This Court has jurisdiction over this matter.

2. The Complaint charges that Defendants participated in deceptive and unfair acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), Section 310.3(b) of the FTC's Trade Regulation Rule entitled Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.3(b), Section 404 of CROA, 15 U.S.C. § 1679b, and Section 2(c) of the CRFA, 15 U.S.C. § 45b, in connection with their business of applying for and obtaining credit cards on behalf of consumers in exchange for a fee.

3. Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order. Only for purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

4. Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

5. Defendants and the Commission waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A. "**Clearly and Conspicuously**" means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

1. In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented. In any communication made through both visual and

audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2.  A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3.  An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

4.  In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5.  The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

6.  The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

7.  The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8.  When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

B.  **"Consumer Credit"** means credit advanced to a consumer for the purchase of goods or services, including by a credit card.

C.  **"Consumer Credit Service"** means an arrangement where a Person assists a consumer in applying for or obtaining Consumer Credit in exchange for a fee or other financial compensation.  Consumer Credit Service does not include mortgage brokerage services.

D. **"Consumer Financial Account Information"** means any information that is identified with a consumer concerning a financial account, including account numbers, credit card account balances or limits, depository bank account balances, mortgage or automobile balances, or any other financial account balance or limit.

E. "**Corporate Defendants**" means Seed Consulting, LLC (also doing business as Seed Capital and Foundation Funding) and Credit Navigator, LLC, and each of their subsidiaries, affiliates, successors, and assigns.

F. **"Covered Communication"** means a written, oral, or Pictorial review, performance assessment, or other similar analysis of goods or services, including conduct related to the goods or services.

G. **"Credit Repair Service"** means any service, in return for payment of money or other consideration, for the express or implied purpose of: (1) improving any consumer's credit report, credit record, credit history, credit profile, credit score, or credit rating; or (2) providing advice or assistance to any consumer with regard to any activity or service the purpose of which is to improve any consumer's credit report, credit record, credit history, credit profile, credit score, or credit rating.

H. "**Defendants**" means the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination.

I. "**Including**" means including but not limited to.

J. "**Individual Defendants**" means Erik Gantz and Randy Lang.

K. "**Person**" means any natural person, organization, or legal entity, including a corporation, limited liability company, partnership, proprietorship, association, cooperative, government or governmental subdivision or agency, or any other group or combination acting as an entity.

L. **"Pictorial"** includes pictures, photographs, video, illustrations, and symbols.

4

M.    **"Review-Limiting Contract Term"** means a standardized contract term that:

1.    prohibits or restricts the ability of a Person who is a party to the contract to engage in a Covered Communication;

2.    imposes a penalty or fee against a Person who is a party to the contract for engaging in a Covered Communication; or

3.    transfers, or requires a Person who is a party to the contract to transfer, to any other Person any intellectual property rights in a Covered Communication, with the exception of a non-exclusive license to lawfully use a Covered Communication about a Defendant's goods, services, or conduct.

## I.

## BAN ON SELLING CONSUMER CREDIT SERVICES

**IT IS ORDERED** that Defendants are permanently restrained and enjoined from advertising, marketing, promoting, or offering for sale, or assisting in the advertising, marketing, promoting, or offering for sale of, any Consumer Credit Service.

## II.

## PROHIBITED BUSINESS ACTIVITIES

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, or offering for sale of any good or service, other than those banned by Section I of this Order, are permanently restrained and enjoined from:

A.    Misrepresenting, or assisting others in misrepresenting, expressly or by implication:

1.      The financial status of any customer, including the customer's income or assets, in connection with any submission to a financial institution or credit bureau;

2.      That consumers are likely to earn substantial income, or a specific level or range of actual or potential income;

3.      The impact of any service provided by Defendants on a consumer's credit record, credit history, or credit rating;

4.      The extent to which and the manner in which Defendants will use, transfer, share, or disclose Consumer Financial Account Information;

5.      Any Person's ability to improve or otherwise affect a consumer's credit record, credit history, or credit rating or ability to obtain credit;

6.      That any Person can improve any consumer's credit record, credit history, or credit rating by permanently removing negative information from the consumer's credit record, credit history, or credit rating, even where such information is accurate and not obsolete;

7.      The terms or rates that are available for any loan or other extension of credit, including, but not limited to: (a) the type of credit (such as a credit card, line of credit, or loan); (b) closing costs or other fees and how such costs or fees will be assessed; (c) the payment schedule, monthly payment amount(s), any balloon payment, or other payment terms; (d) the interest rate(s), annual percentage rate(s), or finance charge(s), and whether they are fixed or adjustable; (e) the loan amount, credit amount, draw amount, or outstanding balance; the loan term, draw period, or maturity; or any other term of credit; (f) the amount of cash to be disbursed to the borrower out of the proceeds, or the amount of cash to be disbursed on behalf of the borrower to any third parties; (g) whether any specified minimum payment amount covers both interest and principal, and whether the credit has or can result in negative amortization; or (h) that the credit

does not have a prepayment penalty or whether subsequent refinancing may trigger a prepayment penalty and/or other fees; or

        8.    Any other fact material to consumers concerning any good or service, such as: the total costs; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics; and

B.    Failing to disclose Clearly and Conspicuously, in connection with any representation regarding the availability of any loan or other extension of credit: (1) the type of credit (such as a credit card, line of credit, or loan); (2) all costs associated with such extension of credit and how such costs shall be assessed; (3) the interest rate(s), annual percentage rate(s), or finance charge(s), and whether they are fixed or adjustable; and (4) the loan amount, credit amount or limit, draw amount, or outstanding balance.

## III.

## PROHIBITIONS REGARDING CREDIT REPAIR SERVICES

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, or offering for sale of any Credit Repair Service, other than those banned by Section I of this Order, are permanently restrained and enjoined from:

A.    Engaging in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any Person in connection with the offer or sale of a Credit Repair Service;

B.    Making any statement or advising any consumer to make any statement, which is untrue or misleading or should be known to be untrue or misleading, with respect to any consumer's credit worthiness, credit standing, or credit capacity to: (A) any consumer reporting agency (as defined in section 15

7

U.S.C. § 1681a(f)); or (B) any person— (i) who has extended credit to the consumer; or (ii) to whom the consumer has applied or is applying for an extension of credit;

C.      Failing to provide any Person with a written statement of "Consumer Credit File Rights Under State and Federal Law," in the form and manner required by Section 405(a) of CROA, 15 U.S.C. § 1679c(a);

D.      Failing to include in contracts for any Credit Repair Service a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, regarding the consumer's right to cancel the contracts without penalty or obligation at any time before the third business day after the date on which consumers signed the contracts, in the form and manner required by Section 406(b)(4) of CROA, 15 U.S.C. § 1679d(b)(4);

E.      Failing to provide any Person with a separate form with the heading "Notice of Cancellation," in the form and manner required by Section 407(b) of CROA, 15 U.S.C. § 1679e(b);

F.      Charging or receiving any money or other consideration for the performance of any Credit Repair Service before such Credit Repair Service is fully performed; or

G.      Violating CROA, 15 U.S.C. §§ 1679-1679j, a copy of which is attached as Attachment A.

## IV.

## PROHIBITION AGAINST DISCLOSURE OF CONSUMER FINANCIAL ACCOUNT INFORMATION

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, and employees, and all other Persons in active concert or participation with any of them who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from selling, transferring, or

disclosing any consumer's Consumer Financial Account Information without the consumer's express informed consent to the sale, transfer, or disclosure.

## V.

## PROHIBITION AGAINST ASSISTING AND FACILITATING

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, and employees, and all other Persons in active concert or participation with any of them who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from providing substantial assistance or support to any Person that they know, or should know, is engaged in:

A.     Misrepresenting, directly or by implication, any material aspect of the performance, efficacy, nature, or central characteristics of any goods and services;

B.     Misrepresenting, directly or by implication, any material aspect of the nature or terms of any refund, cancellation, exchange, or repurchase policies;

C.     The unauthorized debiting or charging of consumer bank or credit card accounts; or

D.     Any deceptive, unfair, or abusive act or practice prohibited by Section 5 of the FTC Act or by the TSR.

## VI.

## PROHIBITED USE OF REVIEW-LIMITING CONTRACT TERMS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, and employees, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any good or service, must not:

A.     Offer to any prospective customer a contract, or offer to any customer a renewal contract, that includes a Review-Limiting Contract Term;

B.     Require that a customer accept a Review-Limiting Contract Term as a condition of Defendants' fulfillment of its obligations under a customer contract that Defendants entered into before the effective date of this Order; or

C. Attempt to enforce or assert the validity of any Review-Limiting Contract Term in any customer contract that Defendants entered into before the effective date of this Order.

Nothing in this Paragraph shall require Defendants to publish or host the content provided by any Person, affect any other legal duty of a party to a contract, or affect any cause of action arising from the breach of such duty.

## VII.

## MONETARY JUDGMENT

**IT IS FURTHER ORDERED** that:

A. Judgment in the amount of Two Million One Hundred Thousand Dollars ($2,100,000) is entered in favor of the Commission against Defendants, jointly and severally, as equitable monetary relief.

B. Defendants are ordered to pay to the Commission Two Million One Hundred Thousand Dollars ($2,100,000), which, as Defendants stipulate, their undersigned counsel holds in escrow for no purpose other than payment to the Commission. Such payment must be made within 7 days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

C. Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

D. The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

E. The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the

Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

F.     Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Defendants must submit to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

G.     All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.  If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint.  Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement.  Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

## VIII.

## CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants and Defendants' officers, agents, and employees, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby permanently restrained and enjoined from directly or indirectly:

A.     Failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress.  If a representative of the Commission requests in writing any information related to redress, Defendants must provide it, in the form prescribed by the Commission, within 14 days;

B. Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Defendant obtained prior to entry of this Order in connection with their business of applying for and obtaining credit cards on behalf of consumers in exchange for a fee; and

C. Failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after receipt of written direction to do so from a representative of the Commission.

*Provided, however*, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## IX.

## COOPERATION

**IT IS FURTHER ORDERED** that Defendants must fully cooperate with representatives of the Commission in this case and in any investigation related to or associated with the transactions or the occurrences that are the subject of the Complaint. Such Defendants must provide truthful and complete information, evidence, and testimony. Such Individual Defendants must appear and such Corporate Defendants must cause Defendants' officers, employees, representatives, or agents to appear for interviews, discovery, hearings, trials, and any other proceedings that a Commission representative may reasonably request upon 5 days written notice, or other reasonable notice, at such places and times as a Commission representative may designate, without the service of a subpoena.

# X.

## ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defendants obtain acknowledgments of receipt of this Order:

A.     Each Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.     For 5 years after entry of this Order, each Individual Defendant for any business that such Defendant, individually or collectively with any other Defendant, is the majority owner or controls directly or indirectly, and each Corporate Defendant, must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for conduct related to the subject matter of the Order and all agents and representatives who participate in conduct related to the subject matter of this Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C.     From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

# XI.

## COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendants make timely submissions to the Commission:

A.     One year after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury:

13

1.     Each Defendant must:  (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Individual Defendants must describe if they know or should know due to their own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.     Additionally, each Individual Defendant must:  (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.     For 10 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.     Each Defendant must report any change in:  (a) any designated point of contact; or (b) the structure of any Corporate Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:  creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.    Additionally, each Individual Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.    Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.    Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:  "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on:  _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.    Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue, NW, Washington, DC  20580.  The subject line must begin:  *FTC v. Seed Consulting, LLC, et al*.

## XII.

## RECORDKEEPING

**IT IS FURTHER ORDERED** that Defendants must create certain records for 10 years after entry of the Order, and retain each such record for 5 years. Specifically, Corporate Defendants and each Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is a

majority owner or controls directly or indirectly, must create and retain the following records:

A.    accounting records showing the revenues from all goods or services sold;

B.    personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:  name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.    records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response; and

D.    all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission.

## XIII.

## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendants' compliance with this Order, including any failure to transfer any assets as required by this Order:

A.    Within 14 days of receipt of a written request from a representative of the Commission, each Defendant must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.    For matters concerning this Order, the Commission is authorized to communicate directly with each Defendant.  Defendants must permit representatives of the Commission to interview any employee or other Person

affiliated with any Defendant who has agreed to such an interview.  The Person interviewed may have counsel present.

C.    The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.    Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Individual Defendants, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

## XIV.

## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

DATED February 1, 2021.

_____
UNITED STATES DISTRICT JUDGE

17

**SO STIPULATED AND AGREED:**

**For Plaintiff**
**Federal Trade Commission:**

Dated:  January 26, 2021

BRIAN N. LASKY
CHRISTOPHER Y. MILLER
Federal Trade Commission
One Bowling Green, Suite 318
New York, NY 10004
Phone:  (212) 607-2829
Fax:  (212) 607-2822
Email:  blasky@ftc.gov

**For Defendants Seed Consulting, LLC,
Credit Navigator, LLC, Erik Gantz, and
Randy Lang**

Dated: _10-12_____, 2020

LEONARD L. GORDON
Venable LLP
1270 Avenue of the Americas
New York, NY 10020
(212) 370-6252
(212) 307-5598 (Fax)
llgordon@venable.com

**Defendant Erik Gantz**

Dated: _Oct 12th_, 2020

ERIK GANTZ
*Individually and on behalf of the
Corporate Defendants*

**Defendant Randy Lang**

Dated: _Oct. 6th_, 2020

RANDY LANG
*Individually*

19

# Attachment A

---

**15 USC CHAPTER 41, SUBCHAPTER II-A: CREDIT REPAIR ORGANIZATIONS**

**From Title 15—COMMERCE AND TRADE**
    CHAPTER 41—CONSUMER CREDIT PROTECTION

---

## SUBCHAPTER II–A—CREDIT REPAIR ORGANIZATIONS

# §1679. Findings and purposes

**(a) Findings**

The Congress makes the following findings:

(1) Consumers have a vital interest in establishing and maintaining their credit worthiness and credit standing in order to obtain and use credit. As a result, consumers who have experienced credit problems may seek assistance from credit repair organizations which offer to improve the credit standing of such consumers.

(2) Certain advertising and business practices of some companies engaged in the business of credit repair services have worked a financial hardship upon consumers, particularly those of limited economic means and who are inexperienced in credit matters.

**(b) Purposes**

The purposes of this subchapter are—

(1) to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and

(2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations.

(Pub. L. 90–321, title IV, §402, as added Pub. L. 104–208, div. A, title II, §2451, Sept. 30, 1996, 110 Stat. 3009–455.)

### PRIOR PROVISIONS

A prior title IV of Pub. L. 90–321, May 29, 1968, 82 Stat. 164, as amended by Pub. L. 91–344, July 20, 1970, 84 Stat. 440; Pub. L. 92–321, June 30, 1972, 86 Stat. 382, which was set out as a note under section 1601 of this title, established a bipartisan National Commission on Consumer Finance to study the functioning and structure of the consumer finance industry as well as consumer credit transactions generally. The Commission was to submit a final report by Dec. 31, 1972, and was to cease to exist thereafter.

### EFFECTIVE DATE

Pub. L. 90–321, title IV, §413, as added by Pub. L. 104–208, div. A, title II, §2451, Sept. 30, 1996, 110 Stat. 3009–462, provided that: "This title [enacting this subchapter] shall apply after the end of the 6-month period beginning on the date of the enactment of the Credit Repair Organizations Act [Sept. 30, 1996], except with respect to contracts entered into by a credit repair organization before the end of such period."

### SHORT TITLE

This subchapter known as the "Credit Repair Organizations Act", see Short Title note set out under section 1601 of this title.

# §1679a. Definitions

For purposes of this subchapter, the following definitions apply:

**(1) Consumer**

The term "consumer" means an individual.

**(2) Consumer credit transaction**

The term "consumer credit transaction" means any transaction in which credit is offered or extended to an individual for personal, family, or household purposes.

**(3) Credit repair organization**

The term "credit repair organization"—

(A) means any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of—

    (i) improving any consumer's credit record, credit history, or credit rating; or

    (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i); and

(B) does not include—

    (i) any nonprofit organization which is exempt from taxation under section 501(c)(3) of title 26;

    (ii) any creditor (as defined in section 1602 of this title), with respect to any consumer, to the extent the creditor is assisting the consumer to restructure any debt owed by the consumer to the creditor; or

    (iii) any depository institution (as that term is defined in section 1813 of title 12) or any Federal or State credit union (as those terms are defined in section 1752 of title 12), or any affiliate or subsidiary of such a depository institution or credit union.

### (4) Credit

The term "credit" has the meaning given to such term in section 1602(e) [1] of this title.

(Pub. L. 90–321, title IV, §403, as added Pub. L. 104–208, div. A, title II, §2451, Sept. 30, 1996, 110 Stat. 3009–455.)

## REFERENCES IN TEXT

Section 1602(e) of this title, referred to in par. (4), was redesignated section 1602(f) of this title by Pub. L. 111–203, title X, §1100A(1)(A), July 21, 2010, 124 Stat. 2107.

## PRIOR PROVISIONS

For a prior section 403 of Pub. L. 90–321, see note set out under section 1679 of this title.

## EFFECTIVE DATE

Section applicable after the end of the 6-month period beginning on Sept. 30, 1996, except with respect to contracts entered into by a credit repair organization before the end of such period, see section 413 of Pub. L. 90–321, as added by Pub. L. 104–208, set out as a note under section 1679 of this title.

[1] See References in Text note below.

# §1679b. Prohibited practices

### (a) In general

No person may—

    (1) make any statement, or counsel or advise any consumer to make any statement, which is untrue or misleading (or which, upon the exercise of reasonable care, should be known by the credit repair organization, officer, employee, agent, or other person to be untrue or misleading) with respect to any consumer's credit worthiness, credit standing, or credit capacity to—

        (A) any consumer reporting agency (as defined in section 1681a(f) of this title); or

        (B) any person—

            (i) who has extended credit to the consumer; or

            (ii) to whom the consumer has applied or is applying for an extension of credit;

    (2) make any statement, or counsel or advise any consumer to make any statement, the intended effect of which is to alter the consumer's identification to prevent the display of the consumer's credit record, history, or rating for the purpose of concealing adverse information that is accurate and not obsolete to—

        (A) any consumer reporting agency;

        (B) any person—

            (i) who has extended credit to the consumer; or

            (ii) to whom the consumer has applied or is applying for an extension of credit;

    (3) make or use any untrue or misleading representation of the services of the credit repair organization; or

    (4) engage, directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization.

### (b) Payment in advance

No credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed.

(Pub. L. 90–321, title IV, §404, as added Pub. L. 104–208, div. A, title II, §2451, Sept. 30, 1996, 110 Stat. 3009–456.)

## PRIOR PROVISIONS

For a prior section 404 of Pub. L. 90–321, see note set out under section 1679 of this title.

## EFFECTIVE DATE

Section applicable after the end of the 6-month period beginning on Sept. 30, 1996, except with respect to contracts entered into by a credit repair organization before the end of such period, see section 413 of Pub. L. 90–321, as added by Pub. L. 104–208, set out as a note under section 1679 of this title.

# §1679c. Disclosures

**(a) Disclosure required**

Any credit repair organization shall provide any consumer with the following written statement before any contract or agreement between the consumer and the credit repair organization is executed:

**"Consumer Credit File Rights Under State and Federal Law**

"You have a right to dispute inaccurate information in your credit report by contacting the credit bureau directly. However, neither you nor any 'credit repair' company or credit repair organization has the right to have accurate, current, and verifiable information removed from your credit report. The credit bureau must remove accurate, negative information from your report only if it is over 7 years old. Bankruptcy information can be reported for 10 years.

"You have a right to obtain a copy of your credit report from a credit bureau. You may be charged a reasonable fee. There is no fee, however, if you have been turned down for credit, employment, insurance, or a rental dwelling because of information in your credit report within the preceding 60 days. The credit bureau must provide someone to help you interpret the information in your credit file. You are entitled to receive a free copy of your credit report if you are unemployed and intend to apply for employment in the next 60 days, if you are a recipient of public welfare assistance, or if you have reason to believe that there is inaccurate information in your credit report due to fraud.

"You have a right to sue a credit repair organization that violates the Credit Repair Organization Act. This law prohibits deceptive practices by credit repair organizations.

"You have the right to cancel your contract with any credit repair organization for any reason within 3 business days from the date you signed it.

"Credit bureaus are required to follow reasonable procedures to ensure that the information they report is accurate. However, mistakes may occur.

"You may, on your own, notify a credit bureau in writing that you dispute the accuracy of information in your credit file. The credit bureau must then reinvestigate and modify or remove inaccurate or incomplete information. The credit bureau may not charge any fee for this service. Any pertinent information and copies of all documents you have concerning an error should be given to the credit bureau.

"If the credit bureau's reinvestigation does not resolve the dispute to your satisfaction, you may send a brief statement to the credit bureau, to be kept in your file, explaining why you think the record is inaccurate. The credit bureau must include a summary of your statement about disputed information with any report it issues about you.

"The Federal Trade Commission regulates credit bureaus and credit repair organizations. For more information contact:

"The Public Reference Branch

"Federal Trade Commission

"Washington, D.C. 20580".

**(b) Separate statement requirement**

The written statement required under this section shall be provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer.

**(c) Retention of compliance records**

**(1) In general**

The credit repair organization shall maintain a copy of the statement signed by the consumer acknowledging receipt of the statement.

**(2) Maintenance for 2 years**

The copy of any consumer's statement shall be maintained in the organization's files for 2 years after the date on which the statement is signed by the consumer.

(Pub. L. 90–321, title IV, §405, as added Pub. L. 104–208, div. A, title II, §2451, Sept. 30, 1996, 110 Stat. 3009–457.)

### REFERENCES IN TEXT

The Credit Repair Organization Act, referred to in subsec. (a), probably means the Credit Repair Organizations Act, Pub. L. 90–321, title IV, as added Pub. L. 104–208, div. A, title II, §2451, Sept. 30, 1996, 110 Stat. 3009–454, which is classified generally to this subchapter. For complete classification of this Act to the Code, see Short Title note set out under section 1601 of this title and Tables.

### PRIOR PROVISIONS

For a prior section 405 of Pub. L. 90–321, see note set out under section 1679 of this title.

### EFFECTIVE DATE

Section applicable after the end of the 6-month period beginning on Sept. 30, 1996, except with respect to contracts entered into by a credit repair organization before the end of such period, see section 413 of Pub. L. 90–321, as added by Pub. L. 104–208, set out as a note under section 1679 of this title.

## §1679d. Credit repair organizations contracts

**(a) Written contracts required**

No services may be provided by any credit repair organization for any consumer—

(1) unless a written and dated contract (for the purchase of such services) which meets the requirements of subsection (b) has been signed by the consumer; or

(2) before the end of the 3-business-day period beginning on the date the contract is signed.

**(b) Terms and conditions of contract**

No contract referred to in subsection (a) meets the requirements of this subsection unless such contract includes (in writing)—

(1) the terms and conditions of payment, including the total amount of all payments to be made by the consumer to the credit repair organization or to any other person;

(2) a full and detailed description of the services to be performed by the credit repair organization for the consumer, including—

(A) all guarantees of performance; and

(B) an estimate of—

(i) the date by which the performance of the services (to be performed by the credit repair organization or any other person) will be complete; or

(ii) the length of the period necessary to perform such services;

(3) the credit repair organization's name and principal business address; and

(4) a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: "You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.".

(Pub. L. 90–321, title IV, §406, as added Pub. L. 104–208, div. A, title II, §2451, Sept. 30, 1996, 110 Stat. 3009–458.)

### PRIOR PROVISIONS

For a prior section 406 of Pub. L. 90–321, see note set out under section 1679 of this title.

### EFFECTIVE DATE

Section applicable after the end of the 6-month period beginning on Sept. 30, 1996, except with respect to contracts entered into by a credit repair organization before the end of such period, see section 413 of Pub. L. 90–321, as added by Pub. L. 104–208, set out as a note under section 1679 of this title.

## §1679e. Right to cancel contract

**(a) In general**

Any consumer may cancel any contract with any credit repair organization without penalty or obligation by notifying the credit repair organization of the consumer's intention to do so at any time before midnight of the 3rd business day which begins after the date on which the contract or agreement between the consumer and the credit repair organization is executed or would, but for this subsection, become enforceable against the parties.

**(b) Cancellation form and other information**

Each contract shall be accompanied by a form, in duplicate, which has the heading "Notice of Cancellation" and contains in bold face type the following statement:

"You may cancel this contract, without any penalty or obligation, at any time before midnight of the 3rd day which begins after the date the contract is signed by you.

"To cancel this contract, mail or deliver a signed, dated copy of this cancellation notice, or any other written notice to [ name of credit repair organization ] at [ address of credit repair organization ] before midnight on [ date ]

"I hereby cancel this transaction,

[ date ]

[ purchaser's signature ].".

**(c) Consumer copy of contract required**

Any consumer who enters into any contract with any credit repair organization shall be given, by the organization—

(1) a copy of the completed contract and the disclosure statement required under section 1679c of this title; and

(2) a copy of any other document the credit repair organization requires the consumer to sign,

at the time the contract or the other document is signed.

(Pub. L. 90–321, title IV, §407, as added Pub. L. 104–208, div. A, title II, §2451, Sept. 30, 1996, 110 Stat. 3009–459.)

### Prior Provisions

For a prior section 407 of Pub. L. 90–321, see note set out under section 1679 of this title.

### Effective Date

Section applicable after the end of the 6-month period beginning on Sept. 30, 1996, except with respect to contracts entered into by a credit repair organization before the end of such period, see section 413 of Pub. L. 90–321, as added by Pub. L. 104–208, set out as a note under section 1679 of this title.

## §1679f. Noncompliance with this subchapter

**(a) Consumer waivers invalid**

Any waiver by any consumer of any protection provided by or any right of the consumer under this subchapter—

(1) shall be treated as void; and

(2) may not be enforced by any Federal or State court or any other person.

**(b) Attempt to obtain waiver**

Any attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under this subchapter shall be treated as a violation of this subchapter.

**(c) Contracts not in compliance**

Any contract for services which does not comply with the applicable provisions of this subchapter—

(1) shall be treated as void; and

(2) may not be enforced by any Federal or State court or any other person.

(Pub. L. 90–321, title IV, §408, as added Pub. L. 104–208, div. A, title II, §2451, Sept. 30, 1996, 110 Stat. 3009–459.)

### Effective Date

Section applicable after the end of the 6-month period beginning on Sept. 30, 1996, except with respect to contracts entered into by a credit repair organization before the end of such period, see section 413 of Pub. L. 90–321, as added by Pub. L. 104–208, set out as a note under section 1679 of this title.

## §1679g. Civil liability

**(a) Liability established**

Any person who fails to comply with any provision of this subchapter with respect to any other person shall be liable to such person in an amount equal to the sum of the amounts determined under each of the following paragraphs:

**(1) Actual damages**

The greater of—
    (A) the amount of any actual damage sustained by such person as a result of such failure; or
    (B) any amount paid by the person to the credit repair organization.

### (2) Punitive damages

#### (A) Individual actions

In the case of any action by an individual, such additional amount as the court may allow.

#### (B) Class actions

In the case of a class action, the sum of—
    (i) the aggregate of the amount which the court may allow for each named plaintiff; and
    (ii) the aggregate of the amount which the court may allow for each other class member, without regard to any minimum individual recovery.

### (3) Attorneys' fees

In the case of any successful action to enforce any liability under paragraph (1) or (2), the costs of the action, together with reasonable attorneys' fees.

### (b) Factors to be considered in awarding punitive damages

In determining the amount of any liability of any credit repair organization under subsection (a)(2), the court shall consider, among other relevant factors—
    (1) the frequency and persistence of noncompliance by the credit repair organization;
    (2) the nature of the noncompliance;
    (3) the extent to which such noncompliance was intentional; and
    (4) in the case of any class action, the number of consumers adversely affected.

(Pub. L. 90–321, title IV, §409, as added Pub. L. 104–208, div. A, title II, §2451, Sept. 30, 1996, 110 Stat. 3009–459.)

## EFFECTIVE DATE

Section applicable after the end of the 6-month period beginning on Sept. 30, 1996, except with respect to contracts entered into by a credit repair organization before the end of such period, see section 413 of Pub. L. 90–321, as added by Pub. L. 104–208, set out as a note under section 1679 of this title.

## §1679h. Administrative enforcement

### (a) In general

Compliance with the requirements imposed under this subchapter with respect to credit repair organizations shall be enforced under the Federal Trade Commission Act [15 U.S.C. 41 et seq.] by the Federal Trade Commission.

### (b) Violations of this subchapter treated as violations of Federal Trade Commission Act

#### (1) In general

For the purpose of the exercise by the Federal Trade Commission of the Commission's functions and powers under the Federal Trade Commission Act [15 U.S.C. 41 et seq.], any violation of any requirement or prohibition imposed under this subchapter with respect to credit repair organizations shall constitute an unfair or deceptive act or practice in commerce in violation of section 5(a) of the Federal Trade Commission Act [15 U.S.C. 45(a)].

#### (2) Enforcement authority under other law

All functions and powers of the Federal Trade Commission under the Federal Trade Commission Act shall be available to the Commission to enforce compliance with this subchapter by any person subject to enforcement by the Federal Trade Commission pursuant to this subsection, including the power to enforce the provisions of this subchapter in the same manner as if the violation had been a violation of any Federal Trade Commission trade regulation rule, without regard to whether the credit repair organization—
    (A) is engaged in commerce; or
    (B) meets any other jurisdictional tests in the Federal Trade Commission Act.

### (c) State action for violations

#### (1) Authority of States

In addition to such other remedies as are provided under State law, whenever the chief law enforcement officer of a State, or an official or agency designated by a State, has reason to believe that any person has violated or is violating this subchapter, the State—
    (A) may bring an action to enjoin such violation;
    (B) may bring an action on behalf of its residents to recover damages for which the person is liable to such residents under section 1679g of this title as a result of the violation; and
    (C) in the case of any successful action under subparagraph (A) or (B), shall be awarded the costs of the action and reasonable attorney fees as determined by the court.

**(2) Rights of Commission**

**(A) Notice to Commission**

The State shall serve prior written notice of any civil action under paragraph (1) upon the Federal Trade Commission and provide the Commission with a copy of its complaint, except in any case where such prior notice is not feasible, in which case the State shall serve such notice immediately upon instituting such action.

**(B) Intervention**

The Commission shall have the right—
(i) to intervene in any action referred to in subparagraph (A);
(ii) upon so intervening, to be heard on all matters arising in the action; and
(iii) to file petitions for appeal.

**(3) Investigatory powers**

For purposes of bringing any action under this subsection, nothing in this subsection shall prevent the chief law enforcement officer, or an official or agency designated by a State, from exercising the powers conferred on the chief law enforcement officer or such official by the laws of such State to conduct investigations or to administer oaths or affirmations or to compel the attendance of witnesses or the production of documentary and other evidence.

**(4) Limitation**

Whenever the Federal Trade Commission has instituted a civil action for violation of this subchapter, no State may, during the pendency of such action, bring an action under this section against any defendant named in the complaint of the Commission for any violation of this subchapter that is alleged in that complaint.

(Pub. L. 90–321, title IV, §410, as added Pub. L. 104–208, div. A, title II, §2451, Sept. 30, 1996, 110 Stat. 3009–460.)

## REFERENCES IN TEXT

The Federal Trade Commission Act, referred to in subsecs. (a) and (b), is act Sept. 26, 1914, ch. 311, 38 Stat. 717, as amended, which is classified generally to subchapter I (§41 et seq.) of chapter 2 of this title. For complete classification of this Act to the Code, see section 58 of this title and Tables.

## EFFECTIVE DATE

Section applicable after the end of the 6-month period beginning on Sept. 30, 1996, except with respect to contracts entered into by a credit repair organization before the end of such period, see section 413 of Pub. L. 90–321, as added by Pub. L. 104–208, set out as a note under section 1679 of this title.

## §1679i. Statute of limitations

Any action to enforce any liability under this subchapter may be brought before the later of—
(1) the end of the 5-year period beginning on the date of the occurrence of the violation involved; or
(2) in any case in which any credit repair organization has materially and willfully misrepresented any information which—
(A) the credit repair organization is required, by any provision of this subchapter, to disclose to any consumer; and
(B) is material to the establishment of the credit repair organization's liability to the consumer under this subchapter,

the end of the 5-year period beginning on the date of the discovery by the consumer of the misrepresentation.

(Pub. L. 90–321, title IV, §411, as added Pub. L. 104–208, div. A, title II, §2451, Sept. 30, 1996, 110 Stat. 3009–461.)

## EFFECTIVE DATE

Section applicable after the end of the 6-month period beginning on Sept. 30, 1996, except with respect to contracts entered into by a credit repair organization before the end of such period, see section 413 of Pub. L. 90–321, as added by Pub. L. 104–208, set out as a note under section 1679 of this title.

## §1679j. Relation to State law

This subchapter shall not annul, alter, affect, or exempt any person subject to the provisions of this subchapter from complying with any law of any State except to the extent that such law is inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency.

(Pub. L. 90–321, title IV, §412, as added Pub. L. 104–208, div. A, title II, §2451, Sept. 30, 1996, 110 Stat. 3009–462.)

## EFFECTIVE DATE

Section applicable after the end of the 6-month period beginning on Sept. 30, 1996, except with respect to contracts entered into by a credit repair organization before the end of such period, see section 413 of Pub. L. 90–321, as added by Pub. L. 104–208, set out as a note under section 1679 of this title.